R. WALTER BELL, Appellant, *v.* ELIZABETH HAYES, Respondent.

*Practical location of a right of way reserved by deed — a formal agreement need not be proved — nor an ambiguity in the deed.*

Three persons, who owned a tract of land bordering on Great South Bay, in 1853 divided it between themselves by deeds describing the three parcels thus carved out as bounded on the south by the "strand." Such deeds reserved in front of each parcel and adjoining the strand a right of way two rods in width for the use of all three of these people. Immediately after the partition each of the parties constructed a fence on the southerly boundary of his land, the fences being in a substantially continuous line. The fences remained in position for many years, and there was a well-defined wagon track in close proximity thereto. The owners of the several parcels thereafter continued to use the right of way as thus indicated without objection on the part of any one until in 1898, when the grantee of one of the parcels claimed that the right of way should be located nearer to the shore.

*Held*, that the evidence was sufficient to authorize a finding that the northerly line of the right of way was located by the mutual act and acquiescence of the parties; that a formal agreement need not be proved;

That it was not necessary that there should be any ambiguity in the deeds in order to authorize proof of a practical location of the boundary of the right of way; but that if it were necessary to resort to ambiguity in the descriptions used in the deeds such ambiguity might be discovered in the frequent use of the word "strand" as one of the boundaries of the properties, and in the fact that the "strand' in front of the property, namely, the space between ordinary high and low-water mark, varied almost daily.

APPEAL by the plaintiff, R. Walter Bell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Suffolk on the 12th day of March, 1900, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of April, 1900, denying the plaintiff's motion for a new trial made upon the minutes.

*Charles N. Morgan* [*George E. Morgan* with him on the brief], for the appellant.

*Walter H. Jaycox,* for the respondent.

GOODRICH, P. J.:

The plaintiff claimed that he was the owner of certain premises on and running down to the ordinary high-water mark at Great South Bay, Long Island, upon which he had built a fence, and that the defendant, without his consent, took down and removed a portion of such fence, thus disturbing him in the use of his land to his damage.

The defendant answered, denying the plaintiff's ownership, and alleged that she was the owner of the strand in front of the plaintiff's premises and of a right of way, two rods wide, above the strand ; that the fence was built across the strip over which she had the right of way, and that it was removed for the purpose of permitting her to use her right of way.

The trial turned upon the question whether the predecessor in title of the plaintiff and defendant had made a practical location of the northern boundary of the strip over which the right of way ran, and the question being submitted to the jury a verdict was rendered for the defendant, and the plaintiff appeals.

I cannot state the facts out of which the controversy arose and the question at issue any more clearly or concisely than was done by the learned justice in his charge, and, therefore, quote at length from it, premising that the plaintiff takes title through William B. Arthur to what I shall term the upland, north of a fence which ran nearly parallel to the shore; and the defendant, to what is called the strand, south of such fence, through her mother, Mary Louisa Mills: "Mary Louisa Mills, William B. Arthur and Thomas O. Arthur owned a piece of land which bordered on the South Bay and extended some distance into the interior. They divided that land between themselves by deeds, from each to the others, Mrs. Mills taking the western, Mr. William B. Arthur the middle and Mr. Thomas O. Arthur the eastern third. In describing these three parcels they made the south boundary 'The strand;' so that the three parcels as carved out did not go to the bay, but went to the strand. And in this description there was reserved in front of each

parcel and adjoining the strand a right of way two rods in width for the use of all three of these people. So that in front of this entire strip of land adjoining the strand there was a two-rod strip over which each and all of them had the right to pass; Mrs. Mills having the right to pass east and west over the land of William B. Arthur and Thomas O. Arthur; Thomas O. had the right to pass over the land of William B. Arthur and of Mrs. Mills; and William B. Arthur the right to pass over the land of Mrs. Mills and Thomas O. Arthur. In dividing the strand Thomas O. and William B. Arthur gave to Mrs. Mills one-third the entire shore front of strand. This brought her strand — some 75 or 80 feet of it — in front of the piece deeded to William B. Arthur; so that she owned in front of William B. Arthur's land a strip of strand about 75 or 80 feet in length; and she had a right to go above that on a two-rod right of way. The dispute in this case is as to what is the particular location of the strand that the defendant, the daughter of Mrs. Mills and succeeding to her rights, confessedly owns, and of the two-rod right of way above it. She has the right to the strand, so called, and to the two-rod right of way; and the only question for you to determine is: how far north do they extend? The plaintiff, Mr. Bell, claims that 'The strand' means, and must be interpreted to mean, simply the few feet of space washed by the tide between high and low water mark, and that the defendant is entitled only to that and to a two-rod right of way above it; and he claims that all above that two rods and the strip between high and low water marks belong to him absolutely, and that he has a right to bar the defendant out of it. He put up a fence upon that land above this space and the defendant tore it down. If the defendant is right in her contention, she had a right to tear it down and you cannot find a verdict against her. Counsel for plaintiff has claimed that it was the duty of the court to hold as a matter of law that the deed to the defendant conveyed simply and only the strand between high and low water mark, and that she has a right of way two rods above it, and that there her right stopped, and she had no right to introduce evidence that she owned any more. The law is, and I charge it to be such, that Mrs. Mills and her brothers, William B. and Thomas O. Arthur, had a right to locate their boundaries, to go upon their land together and define where were the limits of the

strand and of the right of way; and if they made such a location and observed it, that controls this litigation."

The plaintiff excepted to the last paragraph, and we are thus brought to the main question argued upon the appeal. The plaintiff contends that the rule as to " practical location " will prevail against the apparent description contained in a deed only, *first*, by proof of some positive act in which both owners concur, done for the purpose of making such location, followed by mutual and continued acquiescence for not less than twenty years; *second*, where there is ambiguity in the words of the deed, or monuments therein named have been obliterated, whereby a dispute as to the boundary has arisen and been settled by the owners; *third*, where a boundary has been agreed upon between parties and in reliance thereon one has made improvements, in which case the rule of estoppel *in pais* might apply.

I need not discuss the third ground, as I am of opinion that evidence as to the practical location was admissible on the other two grounds.

The counsel cites *Corning* v. *Troy Iron & Nail Factory* (44 N. Y. 577), where the court said (p. 595): " In order to establish a line by what is called practical location, it must actually be located, and must be acquiesced in for a long time, probably, at least, twenty years, unless there is an element of estoppel in the case. (Citing cases.) To constitute a practical location of a line or a lot requires the mutual act and acquiescence of the parties. Here there is no evidence whatever that the plaintiffs ever participated or acquiesced in the location of the one-acre lot, so as to include the piece awarded to them, or that they ever knew that it was so located. There can be no claim that any line was practically established before the dock was built, and when that was built, the plaintiffs objected, and there is no proof that they ever acquiesced in it. On the contrary, they objected, and within thirteen years commenced this action." It will be observed that the court says that the dock referred to was built by the defendant and that the plaintiff did not participate or acquiesce therein, and that the action was begun within thirteen years thereafter.

In the case at bar the facts are very different. Evidence was

given that immediately after the partition in 1853, each of the parties to the partition deed erected or maintained a fence on the southerly boundary of his land, which is claimed by the defendant to be the northerly boundary of the right of way, the fences being substantially in a continuous line, each beginning where the other ended; that these fences remained in position for many years; that there was a well-defined wagon track in close proximity to the fence; that the owners of the several plots continued thereafter to use the right of way as thus indicated, and that no one objected until the plaintiff acquired his title in 1898, when for the first time the claim was made that the right-of-way strip should be located farther to the south and nearer to the shore; and in accordance with this view the new and obstructing fence across the strip was erected by him. This evidence was sufficient to authorize a finding that the northerly line of the right of way was located by " the mutual act and acquiescence of the parties," and had thereafter remained in common use by the parties for about forty-five years. It is not necessary to prove that there was any formal agreement between the parties. That may be inferred or implied from the acts of the parties as they appear on the record.

In addition to this there was evidence of declarations as to his rights by the common predecessor in title of both parties, William B. Arthur, while he owned and was in possession of the upland and before its conveyance to the plaintiff. This declaration corroborated the location and use of the right-of-way strip in the place claimed by the defendant.

It is erroneous to suppose that practical location may be proved only in cases where there is ambiguity in the description of a deed. In *Sherman* v. *Kane* (86 N. Y. 57) the court said (p. 73): "The doctrine as to the practical location of a boundary line is well settled in the courts. It was adopted as a rule of repose with a view of quieting titles, and rests upon the same ground as the statute in reference to adverse possession which has continued for a period of twenty years. (*Baldwin* v. *Brown*, 16 N. Y. 359; *Adams* v. *Rockwell*, 16 Wend. 285.) It applies not only to cases of disputed boundary, but to those about which there can be no real question. (See cases last cited; also *Vosburgh* v. *Teator*, 32 N. Y. 561.)"

But if it were necessary to resort to ambiguity in the descriptions

used in the deeds, it might easily be discovered in the frequent use of the word "strand," as one of the boundaries of the properties. This word occurs in the three partition deeds, *e. g.*, as to the upland, "bounded southerly by the strand;" "Also one-third of the strand lying between" the parts of the strand of the other parties. It also appears in the deed to the plaintiff's mother, Mrs. Mills, bounded "southerly by the strand," and in other deeds contained in the record. While in lexicons the word "strand" is defined to be the equivalent of beach, which is the space on the shore between ordinary high and low-water mark (3 Am. & Eng. Ency. of Law [2d ed.], 901), a definition conceded by both parties, it is well known that a strand on the ocean shore does not always continue to maintain its location within definite lines. High and low-tide marks vary almost daily, and there is always more or less erosion and increment of the shore. Here there is testimony that the shore gained and lost by the action of the water; in other words, there was a changing line of strand, and such a changing line justified the admission of evidence of a practical location by the parties in interest.

In *Katz* v. *Kaiser* (154 N. Y. 294) it was declared to be the "settled rule in this state, resting upon public policy, that a practical location of boundaries, which has been acquiesced in for a long series of years, will not be disturbed." In that case there was no evidence of a mutual location. One party built a wall which encroached upon the adjoining premises and remained so for thirty years without objection. The court held that there was a practical location of the boundary line.

*Avery* v. *Empire Woolen Co.* (82 N. Y. 582) confirms this view, that there need not be proof that there was originally any mutual agreement between the parties. The case turned upon the existence of a fence between property of different owners. "There was no evidence," said the court (p. 588), "showing when this division line was first established. The first we know anything about it prior to 1830, there was a fence upon that line, and the great preponderance of the evidence is that the fence has never been changed. It has been reconstructed and repaired always, as I think, upon this same line. In 1859 the fences between these lands were divided, and the portion assigned to each owner, which he was

SECOND DEPARTMENT, APRIL TERM, 1901.　　　　[Vol. 60.

to maintain, and the fences have been maintained in pursuance of that division ever since. These facts constitute a strong case of practical location, and a line thus established should not be disturbed. (*Baldwin* v. *Brown*, 16 N. Y. 359.)"

In addition to this, an uninterrupted use and enjoyment of a right of private way over the land of another for twenty years, with the knowledge and acquiescence of the owner, amounts to an adverse enjoyment sufficient to raise a presumption of a grant, and the use of such an easement for twenty years will be presumed to be under a claim and assertion of right and not by the leave or favor of the owner, and such a use will not only give a title by prescription, but will authorize the presumption of a grant. (*Miller* v. *Garlock*, 8 Barb. 153.) The doctrine of this case was declared also in *Crounse* v. *Wemple* (29 N. Y. 540).

In *Townsend* v. *Bissell* (4 Hun, 297) the court said (p. 301): "Where the owners of adjoining lots make a way between them, each setting off an equal portion of land for that purpose, and they and their grantees continue to use it in common as a way for a period of twenty years, we think the reasonable inference is that such use was under a claim of right, and adverse. It is not necessary to assert such right in words, or by any particular acts or formula of conduct, or to show that the exercise of the right did any actual damage to the party against whom it is claimed, provided it was an invasion of his right. Where there has been a use of an easement for twenty years, under such circumstances, it will, in the absence of contradictory or explanatory evidence, authorize the presumption of a grant."

I have not deemed it necessary to discuss other points raised by the learned counsel for the plaintiff in his very able brief, and I am clearly of opinion that the fencing of the northerly line of the right-of-way strip, and the common use of the road by all the owners for more than forty years, constituted a practical location of the right of way which may not be disturbed.

The judgment and order should be affirmed.

All concurred.

Judgment and order affirmed, with costs.