SADIE E. SEADER, Respondent, v. ANDONINO ZITO and ROSALIA ZITO, His Wife, Appellants.

Fourth Department, January 15, 1919.

**Real property — suit to compel removal of encroachment — evidence justifying judgment for plaintiff.**

Suit to compel the defendants to remove part of a brick building erected by them which the plaintiff contends encroaches upon a triangular strip of land four inches at the base and forty feet in length, owned by her. Evidence and titles of the respective parties examined, and *held*, that the title to said strip is in the plaintiff and that the defendants having made the encroachment against the protest of the plaintiff should be compelled to remove the same.

LAMBERT and HUBBS, JJ., dissented, with opinion.

APPEAL by the defendants, Andonino Zito and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 28th day of February, 1917, upon the decision of the court after a trial at the Monroe Equity Term.

*William J. Maloney*, for the appellants.

*George A. Carnahan* [*Carnahan, Adams, Jameson & Pierce*, attorneys], for the respondent.

DE ANGELIS, J.:

The judgment under review determines that the plaintiff has title to a small piece of land in the city of Rochester, that a part of a brick building erected by the defendants encroaches upon such land and directs the removal of such encroachment.

The land in dispute is described in the complaint as forming an isosceles triangle whose legs are forty feet in length and whose base is eight inches in width fronting on the southerly side of Baden street (formerly McDonald avenue) in the city of Rochester. The base of this triangle is a definite distance from a certain angle on the southerly side of Baden street, the exact location of which angle both sides agree to. The complaint alleges, in substance, that the plaintiff is the owner in fee simple of this triangular piece of land and that she and her predecessors in title were in continuous peaceable and

undisputed possession of such piece of land for more than thirty years immediately preceding the year 1913 or thereabouts; that during all that time there had been maintained continuously in the same place, by the plaintiff's predecessors in title, a fence on the westerly boundary of such triangular piece of land; that in the year 1913 the defendants or their predecessors in title caused this fence to be removed, constructed a fence on the easterly boundary of such triangular piece of land, took possession of such land and have ever since remained in possession thereof; that in the year 1913 the defendants caused to be constructed on such piece of land part of a brick building which has remained thereon ever since; that before the construction of such building began and during the course of its construction the plaintiff and her predecessors in title protested against such construction and warned the defendants that the same would be and was an encroachment upon such triangular piece of land, and that before the commencement of this action the plaintiff demanded of the defendants the removal of such building from such land.

In the year 1850 there was filed in the Monroe county clerk's office a map (Liber 2 of Maps, page 49) showing the plotting and laying out into lots and a street of a tract of land in the city of Rochester bounded on the east by Parker street, now Joseph avenue, and on the west by Clinton street, now Clinton avenue, North. This tract of land was owned by one Henry McDonald who is the source of title to the lands of the plaintiff and defendants, including that in dispute. The street so laid out runs easterly and westerly through the middle of the tract and was originally designated McDonald avenue. Its name has now been changed to that of Baden street.

Lot 7 of this tract, bounded on the east by lot 9, lot 9 bounded on the east by lot 11, and lot 11, all fronting on the southerly side of Baden street, are particularly involved in this controversy. The triangular piece of land in dispute is on the west side of lot 9.

Lot 7 is designated on the map as forty feet wide in front and twenty-four feet wide in rear. Neither side of it is at

right angles to Baden street. Lot 9 is designated on the map as thirty-five feet wide in front and twenty-seven and one-half feet wide in rear. Its west line, which is, of course, the east line of lot 7, is not at right angles to Baden street, but its east line is at right angles to Baden street. Lot 11 is thirty-five feet wide in front and rear and both its east and west lines are at right angles to Baden street. The proof of the plaintiff, and it is quite convincing, is that lot 7 is scant thirty-five feet in width in front. The defendants concededly own lot 7 and a strip eight feet in width off the west side of lot 9. The plaintiff concededly owns the remainder of lot 9 and the westerly part of lot 11. The proof is convincing to me that the plaintiff owns a strip of land off the west side of lot 11 four and a half feet wide in front and six and a half feet wide in the rear, and all of lot 9 except such strip eight feet in width off the west side thereof, in other words, a piece of land thirty-one and one-half feet wide in front and twenty-six feet wide in rear.

The chain of title of the plaintiff and defendants, in its chronological order, is as follows (the italics are mine):

Henry McDonald and wife
　　　　　to　　　　　　　　Warranty deed
　　　Ernst Peters　　　　　Dated October 24, 1851.

Conveys all that tract or parcel of land, situate in the city of Rochester, county of Monroe, and State of New York, bounded on the north by McDonald avenue, on the west by land owned by Henry McDonald and on the south by Mrs. Bowes and on the east by land belonging to Mr. Spies. Said lot *is thirty-five feet front on McDonald avenue* and *twenty-four feet wide* in the rear and extending back to Mrs. Bowes' land.

The description in this conveyance does not in terms refer to lot 7 but it contains an exact description of the width of lot 7 in the rear, describes the front of the lot as thirty-five feet in width and refers to an eastern boundary that in later conveyances is recognized as the east line of lot 7, being the west line of lot 9. The record does not disclose any title in " Mr. Spies." The name appears in the later conveyances, variously, as " Spices," " Mr. Spirs," " Mr. Spice," " Spies," " Spics," but most often as " Spies." Whoever Spies may have been, he probably held a contract for the purchase of

the land east of that conveyed which never matured in title to him. There is no doubt that the property on the east of that conveyed is lot 9.

Ernest Peters and wife
          to
John Marzluff and Elizabeth    Warranty deed
      Marzluff             Dated February 16, 1852.

Conveys the same as the last conveyance except that the rear of the lot is described as twenty-five feet in width and the premises conveyed are recited to be the same as those in the last conveyance.

John Marzluff
         to             Warranty deed
Leo Schlitzer          Dated November 6, 1854.

Conveys by the same description as the last conveyance except that it omits any reference to either of the last two conveyances and adds the following: " The said premises being known as lot number *seven (7)* on a map of the McDonald tract filed in the clerk's office of Monroe County, to which said map reference is hereby had for a more particular description. The part hereby intended to be conveyed being the undivided one-half of the said lot and no more."

Leo Schlitzer and wife
         to             Warranty deed
  Elizabeth Marzluff     Dated November 28, 1854.

Conveys by the same description as the last conveyance.

Henry McDonald and wife
         to         Deed dated
  Martha Hart        September 12, 1855.

Conveys all that tract or parcel of land situate in the city of Rochester, county of Monroe and State of New York, and known and distinguished as lots numbers nine (9) and eleven (11) on the McDonald allotment on the Gorham tract, and surveyed by Daniel McHenry as by reference to a map of the same on file in the office of the clerk of the county of Monroe will more fully appear. Said lot number 9 is thirty-five feet wide in front and twenty-seven and one-half feet wide in the rear and said lot number 11 is thirty-five feet wide in front and rear. Both of said lots are one hundred

and fourteen feet in depth and are bounded in front by McDonald avenue and in the rear by Mrs. Bowles' land.

Martha Hart
　　　to
Ernest Kuhn　　　　　　　Deed dated September 8, 1856.
Conveys by same description as that last above.

Ernest Kuhn and wife
　　　to
John Bahde　　　　　　　Deed dated March 11, 1857.
Conveys by same description as that last above.

Elizabeth Marzluff and
　　John Marzluff
　　　to　　　　　　　　Warranty deed
Ferdinand End　　　　　　Dated September 13, 1859.
Conveys by same description as that in Marzluff to Schlitzer, above.

Leo Schlitzer and wife
　　　to　　　　　　　　Quit-claim deed
Ferdinand End　　　　　　Dated September 14, 1859.
Conveys all that tract or parcel of land situate　*　*　*, bounded on the north on McDonald avenue, on the west by land owned by Henry McDonald and on the south by Mrs, Bowes' land and on the east by land owned by Mr. Spice. and in the sixth ward of the city of Rochester. Said lot is *thirty-five feet front on* McDonald avenue and twenty-five feet wide in the rear and extending back to Mrs. Bowes' land. The said premises being known as *lot number seven* (*No. 7*) on a map of the McDonald tract filed in the clerk's office of the county of Monroe.

John Bahde and wife
　　　to
John W. Guenner　　　　　Deed dated April 11, 1864.
Conveys by same description as that of McDonald to Hart, above.

John W. Guenner
　　　to
Ferdinand End　　　　　　Deed dated May 18, 1864.
Conveys all that tract or parcel of land situate in the city of Rochester, county of Monroe and State of New York,

being eight feet taken off from the west side of lot number nine (9) in the McDonald allotment on the Gorham tract, surveyed by Daniel McHenry according to a map of said allotment on file in the clerk's office of the said county of Monroe. The land hereby intended to be conveyed being *the premises next adjoining the premises now owned and occupied by the party of the second part* and being eight (8) feet wide front and rear and one hundred fourteen (114) feet deep. The party of the first part hereby reserves the privilege for himself and assigns to use the well now on the premises above conveyed in common with the party of the second part for and during the period of five months from the date hereof and no longer. The party of the first part and assigns to have at all reasonable times during the aforesaid period of five months free access through the front gate of the premises now owned and occupied by the party of the second part and not otherwise.

It is to be observed that this eight-foot strip of land is taken from the west side of lot No. 9 and extends the whole depth of the lot, so that the easterly boundary thereof is not at right angles to Baden street. This strip of land adjoins the premises owned and occupied by the party of the second part, that is, the premises known as lot 7. It appears that there was a well on this strip of land and that probably the easterly line of the strip was marked by a fence immediately constructed after the above conveyance because there was reserved to the grantor the privilege of using the front gate of lot 7 which would not have been necessary if a fence had not separated the premises.

Ferdinand End and wife
      to                Quit-claim deed
  William Graebe         Dated July 14, 1864.

Conveys all that tract or parcel of land situate in the city of Rochester bounded north by McDonald avenue, on the west by land now or formerly owned by Henry McDonald, on the south by Mrs. Bowes' land and on the east by land now or formerly owned by one Spies, and being in the sixth (6th) ward of said city and known as lot number seven (No. 7) on a map of the McDonald tract which map is on file in the clerk's office of said county of Mon-

roe. Reference being had to said map for a more particular description.

Also all that other tract or parcel of land being eight (8) feet taken off from the west of lot number nine (No. 9) in the McDonald allotment on the Gorham tract surveyed by Daniel McHenry according to a map of said allotment on file in the clerk's office of said county of Monroe. Reference being had for a more particular description of the last above mentioned tract or parcel of land hereby conveyed by a certain deed executed by John W. Guenner to the said Ferdinand End which deed bears date the 18th day of May, 1864, and was recorded on the same day at eleven o'clock in liber 185 of deeds at page 359.

William Graebe
   to      Quit-claim deed
  Caroline End     Dated July 14, 1864.
Conveys by the same description as last above.

Caroline End and Ferdinand
  End, her husband,
     to      Warranty deed
  Jacob Nunnold    Dated August 2, 1864.
Conveys by the same description as last above.

Elizabeth Marzluff and John
  Marzluff, her husband,
     to      Quit-claim deed
  Jacob Nunnold    Dated August 3, 1864.
Conveys to correct error in above deed from Elizabeth Marzluff and John Marzluff to Ferdinand End where only an undivided half appears to have been conveyed, where the whole should have been conveyed.

John W. Guenner
   to      Deed dated
 John Meyering and wife  February 14, 1867.
Conveys all that tract or parcel of land situate in the city of Rochester, county of Monroe and State of New York, known and distinguished as follows: Being thirty and a half (30½) feet taken from the east side of the following described premises, viz: lots numbers nine (9) and eleven (11) in the McDonald allotment on the Gorham tract surveyed by Daniel

McHenry, reference being had to a map of the same on file in the office of the clerk of the county of Monroe. The premises hereby agreed to be conveyed are thirty and a half (30½) feet front on McDonald avenue and twenty-eight and a half (28½) feet in rear and one hundred fourteen (114) feet deep and are next adjoining on the east the premises on which the dwelling house now owned by John W. Guenner [is located].

William Kuenner (John W.
　　　Guenner)
　　　　・　　to　　　　　　　　Deed dated
　　Peter Frommherz　　　　April 9, 1867.

Conveys all that tract or parcel of land situate in the city of Rochester, county of Monroe and State of New York, and *known and distinguished as lot number nine (9) on the McDonald allotment* on the Gorham tract surveyed by Daniel McHenry as by reference to a map of the same on file in Monroe county clerk's office will more fully appear. *Said lot No. nine (9) is thirty (30) feet wide in front and 28 feet and 4 inches in rear. Said lot No. nine* (9) is one hundred fourteen (114) feet in depth and bounded in front by McDonald avenue and in rear on the south by Mrs. Bouls' land.

This conveyance seems to have been attended with no small degree of error. The grantor, John W. Guenner, seems to have changed his name to William Kuenner. I say this because there seems to be no dispute of the identity of the grantor. The deed conveys *lot No. 9* of the McDonald allotment on the Gorham tract, and in the deed there is no reference to lot *No.* 11. The fact is that the grantor owned a part of lot 11 and only a part of lot 9. He acquired by his deed from Bahde, as already appears, a lot seventy feet wide in front on McDonald avenue and sixty-two and one-half feet wide in the rear, that is, lot 9, thirty-five feet wide in front and twenty-seven and one-half feet wide in the rear, and lot 11, thirty-five feet wide in front and rear. Off the west side of lot 9 he sold a strip of land eight feet wide, leaving the remainder of lot 9 twenty-seven feet wide in front and nineteen and one-half feet wide in the rear. Then he sold all of lot 11 except a strip four and a half feet wide in front

and six and one-half feet wide in the rear. That left him a lot thirty-one and one-half feet wide in front and twenty-six feet wide in the rear. Yet by his deed he conveyed a lot thirty feet wide in front, although he owned a foot and a half more, and twenty-eight and one-third feet wide in the rear although he owned only twenty-six feet in width. The defendants argue that that portion of the frontage of his lot which he failed to convey should be added to the premises of the defendants. Might it not just as well be argued that he gave the land to his neighbor on the east? Could it not be more forcefully argued that he gave it to his neighbor on the east because he only describes land in lot 9? The fact, which both sides seem to concede, that there is a surplus of about sixteen feet between Joseph street and Clinton avenue North, is no reason why this land should be added to that of the defendants.

Jacob Nunnold and wife
to
Daniel Wenner and Catherine      Warranty deed
     Wenner, his wife      Dated July 29, 1872.

Conveys by the same description as that from Caroline End and husband to Jacob Nunnold.

Will of Daniel Wenner      Admitted to probate
     September 21, 1882.

Testator devises his real estate to his wife Catherine Wenner.

Catherine Wenner, widow, and
     survivor of Daniel Wenner
to
Frederick Stuck and Anna Maria      Warranty deed
     Stuck, his wife      Dated August 29, 1889.

Conveys by same description as from End and another to Nunnold.

Frederick Stuck and wife
to      Warranty deed
     Catherine Wenner      Dated June 20, 1895.

Conveys by same description as in last above and recites consideration as satisfaction of mortgage from Stuck and wife to Catherine Wenner.

Last Will and Testament
              of                         Admitted to probate
Catherine Wenner                April 29, 1903.
Devises property to her children, Henry Wenner, Catharine Welker and Magdalena Wenner.

Henry J. Wenner and wife
    and Catharine Welker
              to
Anthony Buonomo and Johanna    Warranty deed
        Buonomo, his wife        Dated April 18, 1903.
Conveys same as from Stuck to Catherine Wenner except that there is a statement of the change in name of McDonald avenue to Baden street.

Magdalena Schuster, formerly
        Magdalena Wenner
              to
Anthony Buonomo and Johanna    Warranty deed
        Buonomo, his wife        Dated April 18, 1903.
Conveys same as last above.

Peter Fromherz
              to                        Deed dated
Abram E. Levin                  September 20, 1904.
Conveys all that tract or parcel of land situate in the city of Rochester, county of Monroe and State of New York, known and distinguished as part of lots No. nine (9) and eleven (11) on the McDonald allotment of the Gorham tract surveyed by Daniel McHenry as by reference to a map of the same on file in Monroe county clerk's office will more fully appear, being bounded on the west by premises conveyed by John W. Guenner to Ferdinand End by deed dated May 18, 1864, and recorded in Monroe county clerk's office in Liber 185 of Deeds at page 359, and on the east by premises conveyed by John W. Guenner to John Meyering and Catherine Meyering by deed dated February 14, 1867, and recorded in Monroe county clerk's office in Liber 207 of Deeds at page 393.

The premises hereby conveyed are situate on the south side of Baden street (formerly McDonald avenue) and are *about thirty (30) feet wide in front more or less and about twenty-*

*eight feet four inches (28 ft. 4 in.) wide in rear, more or less* and about one hundred fourteen (114) feet deep, more or less. Being the same premises conveyed to the party of the first part by William Kuenner (or John W. Guenner) by deed dated April 9, 1867, and recorded in Monroe county clerk's office in Liber 211 of Deeds at page 125.

Anthony Buonomo and
Johanna Buonomo his wife
         to
Andonino Zito and Rosalia         Warranty deed
     Zito his wife              Dated April 14, 1910.

Conveys by same description as from Magdalena Schuster to parties of the first part.

Abram E. Levin
        to
Rebecca Levin             Deed dated June 17, 1913.

Conveys by same description as in Fromherz to Levin.

Rebecca Levin
        to
Sadie E. Seader         Deed dated August 11, 1915.

Conveys by same description as in Levin to Levin.

Mr. Lozier, the surveyor, called by the plaintiff, after making the proper offset from the established monument in the angle of Baden street, ran a line along the southerly line of Baden street, easterly one hundred and sixty-two and one-half feet to a point which he determined to be the east line of lot 11. In doing this he determined the frontage of lot 7 to be thirty-five feet and not forty feet as shown by the figures on the McDonald map. Otherwise his measurements agreed with the figures on the map. He justifies his correction as to the frontage of lot 7 on several different grounds. The McDonald map shows on its face no scale. Lozier made various tests and determined the scale to be sixty feet to the inch. Using that scale he made the frontage of lot 7 scant thirty-five feet. He found at the point which he determined to be the east line of lot 11 an old fence. From that point he measured westerly along the front of lot 11 thirty and one-half feet, the distance given in the deed from Guenner to Meyering dated February 14, 1867, and that brought him to a point

three inches east of an old fence. He then measured thirty-one and one-half feet west and that brought him to a point eight-tenths of a foot or nine and six-tenths inches west of a fence running back to the corner of the brick building in question. As already indicated, after the conveyance to Meyering, there remained in Guenner a lot whose frontage was thirty-one and one-half feet. This fence is the one in dispute. The point Lozier reached in his measurement, nine and six-tenths inches west of the fence, being the former line of the fence, marked the westerly line of the plaintiff's land and the easterly line of the defendants' land. Proceeding west, he measured forty-three feet from the point nine and six-tenths inches west of the fence in dispute and reached a point nine inches east of an old fence. This substantially verified his assumption that the deeds were right which conveyed lot 7 as having a frontage of thirty-five feet instead of forty feet. The variation was only nine inches, and that in favor of the defendants. The fact that in some way the defendants acquired a strip of land nine inches in width more than they were entitled to, along their western boundary, gave them no right, certainly, to take land from their neighbor on the east. Lozier then proceeded from the point on the street line thirty and one-half feet from the point which he located as the east line of lot No. 11, southerly, to the rear of the lot, where he found an old post, substantially on the south line of lot 11 and where there were some parts of a fence running east and west although there was no fence attached to this post. He then measured westerly twenty-six feet from the old post which brought him nine-tenths of a foot to the east of the fence extending from the building on the lot line, that is, from the southeast corner of the building. He thereby reached the conclusion that the fence in dispute was eight-tenths of a foot on the plaintiff's land at the front and nine-tenths of a foot on the defendants' land in the rear. This shows that the brick building is over on the plaintiff's land fifty-seven one-hundredths of a foot at the front and runs back about twenty-one feet where it crosses the line of the lot.

It is to be observed that all these fences in their present location, except the fence in dispute, are old fences, probably having existed for more than thirty years.

We now return to the land in dispute and particularly the line fence between the properties of the plaintiff and defendants. I think it can fairly be said that that fence before it was arbitrarily removed by the defendants into its present location marked both the actual and practical location of the line between these properties. Upon the undisputed evidence that fence until it was changed by the direction of the defendants in 1913 had existed in its old location for more than thirty years. Although the defendants' engineer testifies that when the fence was in its old location the boards were on the east side of the fence, the great preponderance of evidence is that they were on the west side of the fence. It is to be observed that the defendants' engineer made a survey of the *locus in quo* in 1892 when he seems to have located the line between the parties as that along which the defendants placed the present fence. Over the objection and exception of the plaintiff this surveyor was permitted to testify to a custom in the city of Rochester for placing the posts of a division fence upon the property of one of the parties and the boards over the line on the property of the other. If that rule were adopted in this case, it seems to me that the plaintiff was entitled to recover all the land she claimed and to have the defendants' building removed therefrom. The trial court adopted the rule that the center of the posts of the fence should be regarded as the proper line and so reached a conclusion more favorable to the defendants than they were entitled to.

In order to reach the conclusion arrived at by him, the defendants' engineer assumed that lot 7 was forty feet wide in front, as indicated by the figures on the McDonald map, and, then, to make his survey reach the result desired, he had to take four feet away from the frontage of the lot. It is to be noted that the defendants' engineer does not dispute the correctness of the scale of the McDonald map as determined by the plaintiff's engineer as applied to the lots immediately involved. Certainly the trial judge was justified in adopting the conclusion reached by the engineer of the plaintiff as to the division line between these contending parties.

As I view the evidence in the case, there is no room for the claim that the plaintiff is not entitled to the relief given her by the trial court because of the assertion that although

she might have succeeded if the conveyances in her chain of title had described the land to which she has been adjudged entitled by the judgment under review, such conveyances did not describe it. I think they did describe it; at least that the trial court was justified by the evidence in finding that they did.

It follows from the foregoing that the judgment appealed from must be affirmed, with costs.

All concurred, except LAMBERT and HUBBS, JJ., who dissented, in an opinion by LAMBERT, J.

LAMBERT, J. (dissenting):

The dispute is over a boundary line between lands of the plaintiff and defendants consisting of a small piece of land in the form of an isosceles triangle, with a base of eight-tenths of a foot on the southerly side of Baden street (formerly McDonald avenue) in the city of Rochester, and the sides of which extend southerly for a distance of about forty feet.

The complaint in its allegations of ownership presents but two issues. The first is the allegation of ownership to the specific lands described by metes and bounds. Second, the allegation of adverse possession of the same land. These allegations are put in issue by the answer by appropriate denials and covered by allegations of ownership in the defendants.

The decision has gone for the plaintiff. The judgment rendered is predicated upon findings of fact justifying practical location. Practical location rests in an agreement, express or implied and recognized for a period of twenty years, unless estoppel arises by reason of changed relations induced thereby. (*Corning* v. *Troy Iron & Nail Foundry*, 44 N. Y. 595; *Bell* v. *Hayes*, 60 App. Div. 382; *Katz* v. *Kaiser*, 154 N. Y. 294.) The allegations of the first count of the complaint tender the issue of ownership in fee simple of the premises described by metes and bounds. When the lands thus described are located on the ground by reference to the metes and bounds, then we have the premises claimed by the plaintiff. The second count of the complaint tenders the issue of adverse possession of the identical premises described in the first cause of action. The remaining counts purport to allege the wrongful acts of the defendants and their predecessors in title in depriving the

plaintiff and her predecessors in title of the possession and use of the lands thus described. The doctrine of adverse possession is divergent in principle from that of practical location. Practical location is founded upon mutual acquiescence. Adverse possession, on the other hand, is based upon the assertion of a claim of title hostile to all others.

I am unable to discover any allegations of this complaint setting forth an agreement of the respective owners of the disputed lands, either express or by implication, that a line between these adjoining lots had been made or acquiesced in for the period of twenty years or any other specified time, and for that reason I think this judgment ought not to stand. It was not tried upon the theory of practical location. The trial court, however, at the close of the evidence, applied that doctrine and rendered the judgment from which this appeal is taken. I do not think it ought to stand.

The remaining question is whether the judgment can be upheld upon the issues tendered by the pleadings.

Treating first of the theory of adverse possession, we find that the plaintiff acquired her title in 1915. Twenty years' possession is a prerequisite. In realization of this, she seeks to tack her possession to the possession of her predecessors in title, and in that way establish a continuous possession in the same chain of title for the requisite twenty years. Under the circumstances of this case that she cannot do. There is no privity between the successive owners, either by way of deed or dissent. (*Smith* v. *Reich*, 80 Hun, 287; *Brainin* v. *N. Y., N. H. & H. R. R. Co.*, 136 App. Div. 393; *Staples* v. *Schnackenberg*, 148 id. 161.)

In the case at bar there is no suggestion of any privity by dissent and hence the doctrine of adverse possession is unavailable to the plaintiff. This sends us to the final question, whether the disputed lands are within the plaintiff's deed. If the premises are not within the deed lines, then plaintiff has neither proven record title in herself, nor can she make available adverse possession.

The common source of title to the lands of both parties is McDonald, who, in 1850, plotted a tract including these lands, known as the Gorham tract, and filed a map thereof in the clerk's office of Monroe county. Lots 9 and 11 upon the

McDonald map were first conveyed by McDonald to Hart in 1855, and that deed makes explicit reference to the map in such a way as to read the map into the conveyance. In 1856 Hart conveyed the same lots to Kuhn who, in 1857, conveyed them to Bahde with like reference to the map. In 1864 Bahde conveyed both the lots by like conveyance to Guenner. In 1864 Guenner conveyed to End the westerly eight feet of lot 9. In 1867 Guenner conveyed to Meyering the easterly thirty and one-half feet of lot No. 11. The conveyance to End of eight feet off the westerly side of lot No. 9, and the conveyance to Meyering of the easterly thirty and one-half feet of lot No. 11 left the total frontage, according to the map, of lots 9 and 11 as follows:

| | | |
|---|---|---|
| Frontage of lot 9 as shown on map.... | 35 feet | |
| Frontage of lot 11 as shown on map... | 35 feet | |
| | | 70 feet |
| Conveyed to End.................... | 8 feet | |
| Conveyed to Meyering.............. | 30½ feet | |
| | | 38½ feet |
| Frontage as shown on map..................... | | 70 feet |
| Frontage as conveyed to End and Meyering...... | | 38½ feet |
| Balance unconveyed...................... | | 31½ feet |

This remaining portion of lots 9 and 11 was conveyed by Guenner to Frommherz by *mesne* conveyances to the plaintiff. That deed does not describe frontage of thirty-one and one-half feet, but gives the frontage as being about thirty feet.

As described in the complaint, the lands to which the plaintiff now makes claim, and which are in dispute, are tied by their description to the angle in the southerly line of Baden street. That point is also a tie point upon the map, evidencing the survey of McDonald's allotment in the Guenner tract.

According to the map the northwest corner of the plaintiff's land should be given a distance from that angle as follows: Distance on lot 2, fifty-seven and one-half feet; distance on lot 7, forty feet; distance on lot 9, six feet; total, one hundred and five and one-half feet.

The distance to that corner as set forth in the complaint is only one hundred and one-half feet. Thus, apparently, the plaintiff seeks to establish a location of her northwest corner some five feet further west than is called for by the map. The engineer, Lozier, of the plaintiff and the defendants' ·engineer adopted the same starting point, the angle in Baden street. Lozier then measured the fifty-seven and one-half feet called for by the map upon lot 2, thirty-five feet for lot 7, thirty-five feet for lot 9, and thirty-five feet for lot 11, thus establishing what he claims to be the northeast corner of lot 11. From this point thus located he then measured back west the respective widths of lots 9 and 11 and making allowance for the eight feet sold from the westerly side of lot 9 and thus fixed plaintiff's northwest corner.

Obviously, the trouble with such measurements is that there is a shortage of land in these particular lots. By thus establishing the northeast corner and laying off the lots to the west, plaintiff puts all the shortage upon the defendants. The map is not laid out that way. The complaint does not describe the land with any such location in the mind of the pleader. The map and the complaint tie to the angle in Baden street, the location of which is not uncertain, either on the map or on the ground. Such location presents no dispute in this record.

It must be conceded that the defendants' title is not without question, but that is not important here. In this kind of an action, as in straight ejectment, the plaintiff cannot recover upon any weakness in the defendants' title. The strength of . her own title is all that can avail her. (*Roberts* v. *Baumgarten,* 110 N. Y. 380; *Aubuchon* v. *N. Y., N. H. & H. R. R. Co.,* 137 App. Div. 834.)

As I understand the record, the plaintiff has not shown the lands described in the complaint, or any part thereof, as being in the possession of the defendants to be within her deed line. She has thus failed to show any record title in herself. For the like reason she cannot resort to the doctrine of adverse possession, since, as to such lands, there is no privity as between her and her predecessors in title. The plaintiff's title is within lots 9 and 11 as indicated on the McDonald map, and lots 9 and 11 do not cover or contain the disputed land.

Admitting I am wrong in the conclusions reached, I still

feel that this judgment should not stand.  Our courts have, in similar cases, applied an equitable doctrine in relief of harsh results by refusing mandatory injunction in these cases and granting relief in lieu thereof of money damages.  This rule of equity is well stated by Mr. Justice CLARKE in *Goldbacher* v. *Eggers* (38 Misc. Rep. 36).  The doctrine of that case should be here applied.  Here the injury to the defendants resulting from the removal of a portion of their building would be great, and the corresponding benefit to the plaintiff small.  I think the judgment should be reversed and a new trial granted.

HUBBS, J., concurred.

Judgment affirmed, with costs.